**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | **CASE NO. 22-60251-JWC** |
| | ) | |
| **LAVISH REMODELS LLC,** | ) | **CHAPTER 7** |
| | ) | |
| **Debtor.** | ) | |
| | ) | |

**APPLICATION FOR FINAL COMPENSATION**
**BY ATTORNEYS FOR TRUSTEE AND REQUEST**
**FOR AUTHORIZATION TO PAY COMPENSATION**

COMES NOW, Taylor English Duma LLP ("TED" or "Applicant"), attorneys for Trustee and respectfully represents:

1.

Applicant is currently employed as counsel for Trustee, having been appointed by appropriate Order of this Court.

2.

Applicant has rendered professional services on Trustee's behalf since March 31, 2023, and make this Application for Final Compensation of Fees and Expenses through conclusion of the case after November 7, 2024.

3.

All services for which compensation is requested by Applicant were performed for and on behalf of the Trustee and not on behalf of any creditor or other person.

4.

Applicant has prepared a detailed description of services rendered from March 31, 2023, to the closing of the case after November 7, 2024, by date, time and nature of service performed, which is annexed hereto as Exhibit "A."

5.

Applicant has incurred actual and necessary costs and expenses in the amount of $1,328.38. Said costs and expenses are set forth in Exhibits "A" annexed hereto.

6.

The reasonable value of the services rendered by Applicant, as Counsel for Trustee in these proceedings under Chapter 7 for the period set forth above is $67,096.50. Applicant has devoted a total of 121 hours of attorney and paralegal time for a blended rate of $554.51. The number of hours spent and the hourly rates applicable to each person are set forth on page 10 of Exhibit "A."

7.

Exhibit "B attached hereto consists of the respective résumés of TED attorneys charging for his or her services on behalf of the Trustee.

8.

Exhibit "C" attached hereto is an Affidavit of Neil C. Gordon confirming the facts set out in this Application and Exhibits hereto.

9.

This Application is filed pursuant to §330 and §331 of the Bankruptcy Code. Applicant shows that the final compensation requested by Applicant satisfies the standards and guidelines set forth in Johnson v. Georgia Highway Express, 488 F.2d 714 (U.S.C.A. 5th 1974), and In Re First Colonial Corporation, 544 F.2d 1291 (U.S.C.A. 5th 1977), as amplified by Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292 (11th Cir. 1988).

10.

Debtor filed a voluntary petition (the "Petition") for relief under Chapter 11 of Title 11 of the United States Code on September 5, 2019 (the "Petition Date"), initiating Case No. 22-60251-JWC (the "Case"). Jacinto Huerta ("Mr. Huerta") signed the Petition as the Managing Member of Debtor. Mr. Huerta is the sole owner of Debtor. On January 23, 2023, the United States Trustee filed a *Motion to Convert Case and Request for Hearing on an Expedited Basis* [Doc. No. 21], due to Mr. Huerta's gross mismanagement of the affairs of Debtor and failure to provide any books and records of the business. On January 27, 2023, the Court entered an *Order Converting the Case to Chapter 7* [Doc. No. 27], and Trustee was appointed to the Case as interim Chapter 7 Trustee, pursuant to 11 U.S.C. § 701(a)(1) [Doc. No. 28].

11.

The original Chapter 7 meeting of creditors was scheduled to be held telephonically on February 23, 2023, in accordance with 11 U.S.C. § 341(a) (the "341 Meeting"). Mr.

Huerta failed to appear on behalf of the Debtor at that time, and the 341 Meeting was rescheduled to March 31, 2023. Once again, Mr. Huerta failed to appear at the reset 341 Meeting on March 31, 2023, and the 341 Meeting was rescheduled to April 28, 2023.

12.

Eight (8) creditors made appearances at the reset 341 Meeting on March 31, 2023. Trustee's investigation had shown that Mr. Huerta defrauded several individuals out of at least $800,000.00, presenting phony promissory notes with per annum rates of interest of thirty-five (35%) percent to sixty (60%) percent. One creditor testified that Mr. Huerta went into her bank account and without authority took out $212,000.00 on August 14, 2022. Another creditor stated that as recently as two (2) weeks earlier, Mr. Huerta approached her niece for an "investment." Another creditor stated that Mr. Huerta had taken recent trips to Las Vegas, Nevada and Monterrey, Mexico.

13.

Applicants prepared and filed a *Motion for an Order Compelling Jacinito Huerta, as Principal and Sole Owner of debtor, to Perform His statutory Duties* [Doc. No. 46]. The Court entered an *Order* granting the Trustee's Motion [Doc. No. 46]. Mr. Huerta appeared for the June 16, 2023 reset 341 meeting which was finally held and concluded. The Debtor was directed to produce additional corporate records which only a small portion had been provided to date.

14.

Applicants prepared, filed, and conducted court-approved Rule 2004 of the Federal Rules of Bankruptcy Procedure for Examinations of and Document Productions of Jacinto

Huerta, Jr. (individually and in his capacity as principal and sole managing member of Debtor), Yasmin Perez, and Jae J. Kim (individually and as the owner of Five K Check Cashing, Inc.) to determine how investor monies were processed and utilized. It appeared that Mr. Huerta had defrauded the investors and hidden or moved the cash out of the country, essentially making himself judgment proof. However, Applicant explored an unlikely avenue to make a recovery that appeared to be a long-shot but was ultimately successful.

15.

Through a Rule 2004 examination by Applicant and document production (mostly made a few weeks after the examination), Applicant determined that Debtor had a credit card account with JP Morgan Chase Bank, N.A. ending in 9321 (the “Chase Account”). Debtor received a wire transfer from investor Candelaria De La Cruz (“Cruz”) for $150,000.00 pursuant to certain loan documents in which this loan payment was required to be made to the Debtor (the “Deposit”). This was unlike the other investments which had been by checks immediately cashed by Huerta at cash checking business at a discount.

From the Chase Account, Debtor used the Deposit just over 90-days before the Petition Date to make the payments to the Capital One Account ending in 7609 which Applicant determined was an account in the names of Jacinto Huerta and JE Ventures LLC, a different company which Mr. Huerta controlled (the “Capital One Account”) (collectively, the “Transfers”). The Transfers totaled $149,132.08 (the “Transferred Funds”).

Applicant made written demand on Capital One on April 5, 2024 (the "Date of Demand"), for repayment of the Transferred Funds (the "Demand") asserting the following (collectively, "Trustee's Claims"): (a) the Transferred Funds were paid to the Capital One Account which is in the name of Huerta, JEV and not in the name of Lavish, and Lavish received nothing in exchange for the Transferred Funds; (b) the charges on the Capital One Account paid for with the Transferred Funds were entirely unrelated to Lavish; (c) the Transfers were for no monetary consideration to Lavish; and (d) the Transfers occurred within two (2) years of the Petition Date. A representative of Capital One responded by telephone to Trustee's Demand, declining to pay anything or to even discuss the Demand.

16.

Applicant prepared and filed Trustee's *Complaint* against Capital One, initiating Adversary Proceeding Case No. 24-05084-JWC (the Lawsuit") regarding Trustee's Claims, seeking (a) avoidance of the Transfers under 11 U.S.C. § 548; (b) recovery of the avoided Transfers under 11 U.S.C. § 550; (c) preservation of the avoided Transfers under 11 U.S.C. § 551, and for turnover of the Transferred Funds under 11 U.S.C. § 542. Troutman Pepper appeared on behalf of Capital One and disputed all the Claims. To resolve all Trustee's Claims asserted against Capital One in the Lawsuit, Capital One and Trustee ultimately reached an agreement for a monetary settlement in the amount of $120,000.00 (the "Settlement Payment"), which Capital One remitted to the Trustee on behalf of the Bankruptcy Estate. This represented about 80% of the Demand.

17.

Applicant memorialized the terms of the settlement (the “Settlement Agreement”) and prepared and filed *Trustee’s Motion for an Order Approving Settlement Agreement Under Rule 9019 of the Federal Rules of Bankruptcy Procedure* (the “Settlement Motion”) [Doc. No. 68]. The Court entered an *Order* granting the Settlement Motion and approving the Settlement Agreement. [Doc. No. 71]. Thereafter, Applicant prepared and filed the *Joint Stipulation of Dismissal of Complaint with Prejudice* [Adversary Proceeding Doc. No. 11].

18.

Applicant made informal objections to almost every claim using a Ponzi scheme/investor fraud analysis and employing the predominate methodology for such cases and was able to negotiate withdrawals or substantial reductions to the claims. Applicant was ultimately successful in negotiating reductions, with no compromise whatsoever, from the aggregate of claims filed in the total amount of $1,652,100.05 to an allowed amount of $841,305.60 (an overall reduction of over 49%), thereby increasing the percentage available for Trustee to disburse to allowed nonpriority unsecured creditors.

19.

Applicant further shows that the fees requested in this Application are reasonable under the factors to be considered in evaluating applications for compensation first enunciated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), a civil rights case, and made applicable to fee determinations in bankruptcy

in *In re First Colonial Corp. of America*, 544 F.2d 1291, 1298-99 (5th Cir. 1977). The following summarizes the application of the *Johnson* factors to this Bankruptcy Case:

a. *Time and labor required*: Applicant has expended a total of 121 hours in the representation of the Trustee during the Compensation Period. Applicant attempted to work efficiently in all matters and to use attorneys and paraprofessionals in the most economic fashion. The substance of the time expended is set forth fully in Exhibit "A" to this Application and reflects that Applicant worked long and hard on this case even when any recovery appeared to be hopeless.

b. *Novelty and difficulty of the legal questions*: The Bankruptcy Case thus far has been time consuming and extremely difficult, as reflected in Exhibit "A," with an uncooperative and dishonest debtor principal who had perpetuated an investor fraud scheme against unsophisticated individuals who spoke little or no English. This was an affinity fraud in that Mr. Huerta had been the realtor on the home sales by these investors and cut his commission in half or more thereby gaining their trust. Applicant devoted and invested a great amount of time in trying to unravel the scheme and try to make a recovery with no certainty or likelihood of a recovery from which to be compensated.

c. *Skill required to perform the legal services properly:* Lead counsel has represented this Trustee in thousands of cases and has represented other trustees in several hundred matters and is considered a top expert in his field with over 200 seminar presentations and over 80 published articles in the field.

d. *Preclusion of other employment due to acceptance of the case*: The amount of time devoted to this Bankruptcy Case by the attorneys and paraprofessionals of Applicant precluded them from performing other work to the extent of the time devoted to this Bankruptcy Case during the Compensation Period. Applicant devoted the necessary time and commitment to properly assess the opportunity presented. This required exclusion of other matters to which Applicant's personnel could have instead devoted their time and energy.

e. *Customary fee for similar work in the community*: Applicant respectfully represents that the rates charged by Applicant as set forth in the Summary Sheet attached as Exhibit "A" are below or commensurate with the rates charged by attorneys in the Northern District of Georgia of similar skill and reputation. Applicant submits that this average rate of $554.51 per hour is within the low end of the range of rates customarily charged within this District for work in investor fraud and Ponzi scheme cases by attorneys of far less skill and experience. The rates are below the current rates of Applicant for handling such matters, even though the Eleventh Circuit has stated that in cases of delayed compensation, the compensation should be at current rates and not historical rates.

f. *Whether fee is fixed or contingent*: Although Applicant has handled this matter on a time billing basis, payment has been contingent on successfully making a recovery on behalf of the Estate sufficiently large to cover the time expended thereby leaving Applicant at risk for non-payment. Indeed, Applicant has

heretofore performed services without *any* compensation, and for much of the Case, any recovery to pay compensation was doubtful. As stated by the Eleventh Circuit in *Norman,* attorneys in such situations should be allowed to recover at their current and not historical rates. *See Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988) (stating, "[i]n this circuit, where there is a delay the court should take into account the time value of money and the effects of inflation *and generally award compensation at current rates rather than at historic rates.*") (emphasis added). Thus, Applicant is seeking less than they would be authorized to seek if they charged the Estate their current rates..

g. *Time limitations imposed by the client or circumstances*: Applicant submits that its attorneys have been required to work under a number of time limitations imposed by the circumstances of this Bankruptcy Case as set forth above.

h. *Amount involved and results obtained*: Through Applicant's representation, these issues and others have been reached in a manner favorable to the Estate. Typically, in investor fraud and/or Ponzi scheme cases, the distribution to investors is a little over 3%. Here, the investors will receive an almost 7% distribution.

i. *Experience, reputation, and ability of attorneys*: Applicant respectfully represents that its attorneys have significant experience and ability in handling bankruptcy cases like the subject case, and lead counsel has appeared before the Court for over forty-five (45) years. Exhibit "B" attached to this

Application consists of the résumés of Applicant's attorneys charging for his or her services on behalf of Trustee and reflects that lead counsel is one of the leading national experts in the representation of Chapter 7 trustees, with over 200 seminar presentations and over 80 published articles. Moreover, lead counsel has represented this Trustee in thousands of cases and other trustees in several hundred cases.

j. *Undesirability of the case*: Applicant respectfully represents that this Bankruptcy Case was undesirable given the significant amount of resources and time and effort that had to be committed thereto (and the difficulty of the Debtor) with an unlikelihood of any recovery and uncertainty of payment. Indeed, at best, compensation would be greatly delayed..

k. *Nature and length of the professional relationship with the client*: Applicant routinely represents this Trustee and has been engaged to represent this Trustee in other matters.

l. *Awards in similar cases*: Applicant respectfully represents that the amount sought in the Application is reasonable and within the range of awards in similar cases. Attorneys representing bankruptcy trustees and SEC receivers in investor fraud and Ponzi scheme cases charge far more that Applicant. Moreover, as aforesaid, the Eleventh Circuit in *Norman* made it clear that compensation should be at current rates and not lower historical rates.

20.

As a final point, nowhere in § 704(a) is it stated or even suggested that the Trustee cannot employ counsel for the performance of the Trustee's statutory duties. Just the opposite. In 11 U.S.C. § 327(a), it states that "the trustee, with the court's approval, may employ one or more attorneys, . . . or other professional persons, to represent or assist the trustee in carrying out the trustee's duties under this title." (Emphasis added). That is exactly what the Trustee here has done in this Bankruptcy Case by employing Applicant, and, as a result, nonpriority unsecured creditors will benefit.

WHEREFORE, Applicant pray:

a) For an allowance to be made to it as final compensation to Taylor English Duma LLP, of $67,096.50 as compensation for professional services rendered and $1,328.38 as necessary costs and expenses incurred by it in this proceeding;

b) That Applicant be allowed to receive payment from the Trustee's account for the allowed compensation and expenses to the extent of available funds; and

c) That Applicant have such other and further relief as is just and proper.

Respectfully submitted,

TAYLOR ENGLISH DUMA, LLP

By: /s/ Neil C. Gordon
Neil C. Gordon
State Bar No. 302387

Attorneys for Chapter 7 Trustee

TAYLOR ENGLISH DUMA, LLP
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339
(404) 640-5917
ngordon@taylorenglish.com

taylor | english

Taylor English Duma LLP 1600 Parkwood Circle, Suite 200, Atlanta, Georgia 30339
Main: 770.434.6868 Fax: 770.434.7376 taylorenglish.com

Neil Gordon, Atty for Neil Gordon Trustee
1600 Parkwood Circle
Suite 200
Atlanta, GA 30339

| | |
|---|---|
| Statement Date: | November 7, 2024 |
| Statement No. | 877648 |
| Account No. | 84006.0153 |
| Federal ID No. | 201310229 |

Attn: Neil Gordon

Re: LAVISH REMODELS, LLC Chapter 11, Case

| | | | Hours | |
|---|---|---|---|---|
| 03/31/2023 | NG | Draft memo to P. Bicknell regarding need a motion to compel, grounds, etc, and to get employed | 0.30 | 178.50 |
| | PB | Prepare application for appointment of attorneys and proposed Order | 1.10 | 286.00 |
| 04/01/2023 | NG | Review, revise and supplement lengthy application for employment of Taylor English Duma as counsel to trustee, COS, affidavit and proposed order. | 0.40 | 238.00 |
| 04/03/2023 | PB | Prepare motion to compel debtor (principal) to comply with statutory duties in accordance with 11 U.S.C. section 521 and attend meeting of creditors, notice of hearing on same and certificate of service | 2.80 | 728.00 |
| | NG | Review and complete application to employ accountant, verified statement and proposed order | 0.10 | 59.50 |
| | NG | Review, revise, supplement and complete motion to compel and related hearing notice | 0.40 | 238.00 |
| 04/26/2023 | NG | Prepare for hearing on motion to compel | 0.60 | 357.00 |
| 04/27/2023 | NG | Attend hearing on motion to compel and argue motion (.5); prepare memo to P.Bicknell regarding details for the court order (.2) | 0.70 | 416.50 |
| 05/01/2023 | PB | Prepare Order granting Motion to Compel Compliance of Statutory Duties and Designate Jacinto Huerto as the principal and sole owner of Debtor, the representative of Debtor | 1.30 | 338.00 |
| | NG | Review file including motion to compel (.2); review and revise proposed order on same, (.2) | 0.40 | 238.00 |
| 05/02/2023 | NG | Review entered order granting motion to compel; memo to P. Bicknell regarding same | 0.20 | 119.00 |

EXHIBIT
tabbies
"A"

Neil Gordon, Atty for Neil Gordon Trustee

Statement Date: 11/07/2024
Statement No. 877648
Account No. 84006.0153

| | | | Hours | |
|---|---|---|---|---|
| 06/16/2023 | NG | Draft memo to A. Ford regarding preparation of a Rule 2004 motion for examination and document production, and outline documents and accounting sought | 0.40 | 238.00 |
| 06/30/2023 | NG | Review file and prepare lengthy memo regarding drafting of Broker 2004 exams of debtor and Juerta and Ms. Perez, documents needed, areas of interest, etc. | 1.20 | 714.00 |
| 07/07/2023 | PB | Prepare and obtain execution of verified statement of Auctioneer in accordance with Rules 2014 and 5002 | 0.50 | 130.00 |
| 01/31/2024 | NG | Review and consider new facts regarding proceeds of stolen money invested in girlfriend's house and now to be listed for sale and how to counter this ((.5); draft memo to P. Bicknell to prepare a Rule 2004 for an accelerated examination to likely be followed by a lawsuit, filing of a notice of lis pendens, and possibly injunctive relief (.6) | 1.10 | 808.50 |
| 02/01/2024 | NG | Review documents supporting the urgency of the examinations, and consider the order of the two examinations with debtor principal, both individually and as sole and managing member of the debtor,and his girl friend (and mother of his child) for whom he bought the house when she was 29 years old, the listing price at just under $3 million, the photos of the home with the listing, etc. | 0.70 | 514.50 |
| 02/03/2024 | NG | Work on outline and memo to P. Bicknell for what is needed in Rule 2004 exams and document productions and | 1.30 | 955.50 |
| 02/04/2024 | PB | Review and consider outline from N. Gordon on B.R. 2004 motions and document productions and give consideration to same and review file and documents with respect thereto | 1.70 | 476.00 |
| | PB | Prepare B.R. 2004 Motions for examination of and document production by Yasmin Perez and Jacinto Huerta individually and in his capacity as principal and sole managing member of debtor, document production lists and definitions, and proposed Orders | 3.60 | 1,008.00 |
| 02/05/2024 | NG | Review, revise supplement and complete motions, proposed orders, document production lists and definitions for Yasmin Perez and Jacinto Huerta | 0.90 | 661.50 |
| 02/12/2024 | NG | Review entered orders on Rule 2004 exams and note court would not include the specific dates placed in the motions due to the emergency situation with the home listed for sale at almost $3 million (.2); memo to P. Bicknell to prepare appropriate subpoenas and have a process server retained to serve them (.2) | 0.40 | 294.00 |
| | PB | Prepare package for service of process of the Motion and Order regarding BR 2004 of Yazmin Perez examination and document production | 0.80 | 224.00 |

| | |
|---|---|
| Statement Date: | 11/07/2024 |
| Statement No. | 877648 |
| Account No. | 84006.0153 |

Neil Gordon, Atty for Neil Gordon Trustee

| | | | Hours | |
|---|---|---|---|---|
| | PB | Prepare package for service of process of the Motion and Order regarding BR 2004 of Jacinto Huerta, Jr. examination and document production | 0.80 | 224.00 |
| 02/13/2024 | PB | Prepare Subpoena Duces Tecum of Yasmin Perez (.90); and letter to Ms. Perez regarding BR 2004 Motion and Order (.40); submit order for service of process (.50) | 1.80 | 504.00 |
| | PB | Prepare Subpoena Duces Tecum of Jacinto Huerta, Jr. individually and as principal and sole managing member of Debtor (.90); and letter to Mr. Huerta regarding BR 2004 Motion and Order (.40); submit order for service of process (.50) | 1.80 | 504.00 |
| | NG | Review and complete subpoenas to each deponent | 0.40 | 294.00 |
| 02/14/2024 | NG | Review correspondence and documents from H. Rothbloom regarding home sold (skipping the "under contract" step), and advising P. Bicknell regarding service of the subpoena on Ms. Perez and that she may have moved if this is real | 0.40 | 294.00 |
| 02/15/2024 | NG | Telephone discussion with Matt Levin on behalf of Ms. Perez regarding case and Rule 2004 | 0.40 | 294.00 |
| 02/16/2024 | NG | Correspondence with Matt Levin for Yasmin Perez and to L. Kolba (.2); further correspond with M. Levin (.2) | 0.40 | 294.00 |
| | NG | Multiple correspondence and phone discussions with Matt Levin regarding upcoming document production and depositions and with Huerta as well (.7); draft memo to P. Bicknell regarding background documents needed (.2) | 0.90 | 661.50 |
| 02/19/2024 | NG | Correspondence from Matt Levin regarding upcoming examination and document production and respond thereto | 0.20 | 147.00 |
| 02/22/2024 | NG | Begin reviewing documents for Rule 2004 produced by Huerta and compare to proofs of claim filed in the case and make note of the substantial sums (over $550,000) paid to the closing attorney for the sale to Ms. Perez of the East Conway home (2.4); memo to P. Bicknell regarding preparation of documents for depositions (.2); discussion with Matt Levin regarding issues related to depositions and document production by Ms. Perez (.6) | 3.20 | 2,352.00 |
| 02/23/2024 | PB | Prepare and bate-stamp Exhibits from B.R. 2004 examination of Jacinto Huerta, Jr. | 3.40 | 952.00 |
| | PB | Print, prepare/organize, and mark/bate-stamp document production as exhibits in for the B.R. 2004 Examination of Yasmin Perez | 2.90 | 812.00 |
| | NG | Look over documents produced by Yasmin Perez (1.1); make note that the settlement statement from the sale that just occurred was not produced, and draft correspondence to M. Levin regarding same (.3); exchange further correspondence with M. Levin (.2) | 1.60 | 1,176.00 |

Neil Gordon, Atty for Neil Gordon Trustee

Statement Date: 11/07/2024
Statement No. 877648
Account No. 84006.0153

| | | | Hours | |
|---|---|---|---|---|
| | AF | Review of file and prepare additional exhibits for upcoming b.r. 2004 examinations | 0.80 | 224.00 |
| 02/25/2024 | NG | Complete review and analysis of documents produced, and note debtor's documents were extremely deficient, and draft questions for the Perez examination | 4.40 | 3,234.00 |
| | NG | Correspondence to Huerta regarding missing documents and whether he will bring them to the deposition | 0.20 | 147.00 |
| 02/26/2024 | NG | Conduct Rule 2004 exams of Yasmin Perez and Jacinto Huerta individually and as sole member of the debtor LLC | 5.20 | 3,822.00 |
| | AF | Setup documents for each b.r. 2004 examination (x2) (.3); attend b.r. examination of Jacinto Huerta, Jr. (2.1) | 2.40 | 672.00 |
| 02/28/2024 | NG | Review additional documents from Huerta and correspond with him regarding same | 0.40 | 294.00 |
| 02/29/2024 | NG | Review and analyze correspondence from Huerta with some of the "missing" Chase bank account statements (Sept.-Dec. 2022) and correspond (x8) with Huerta regarding same and potential fraudulent transfer action against Capital One for payment of almost $150,000 of the credit card debt of JE Venture, LLC, and trying to understand what other troubling transactions took place (such as $50,000 withdrawn from the account about a month before the chapter 11 was filed) (1.6); correspondence to L. Kolba regarding foregoing (.1) | 1.70 | 1,249.50 |
| 03/13/2024 | NG | Conference with H. Rothbloom to review results of discovery and possible avoidance actions and discovery still needed (.4); correspondence to Huerta regarding credit card statements required to be produced (.1) | 0.50 | 367.50 |
| 03/18/2024 | NG | Review correspondence and partial document production from Huerta for use in lawsuit to be filed against Capital One (.6); correspondence to Huerta regarding missing documents and view his response (.2); review further correspondence with some of the missing documents and line the transaction payments to Capital One for the JE Venture LLC account with the withdrawals actually made from the Lavish Account (.6) | 1.40 | 1,029.00 |
| 03/19/2024 | NG | Further work on documentation and linking funds out of Lavish to Capital One on a credit card of JE Ventures LLC, and outlining in memo to P. Bicknell the foregoing and how it amounts to a fraudulent transfer | 1.10 | 808.50 |
| 03/28/2024 | NG | Correspondence with H. Rothbloom regarding conference with counsel concerning legal strategy | 0.10 | 73.50 |
| 04/02/2024 | PB | Review of Chase and Capital One Credit Card Statements (.50); prepare demand letter for asserting the fraudulent transfers and avoidability under 11 U.S.C. section 548 and demand for turnover (.90) | 1.40 | 392.00 |

Neil Gordon, Atty for Neil Gordon Trustee

Statement Date: 11/07/2024
Statement No. 877648
Account No. 84006.0153

| | | | Hours | |
|---|---|---|---|---|
| 04/03/2024 | NG | Review, revise, supplement and complete demand letter to Capital One for return of funds fraudulently transferred from debtor's account to Capital One to pay for the unrelated credit card of another company run by Huerta | 0.40 | 294.00 |
| 04/08/2024 | NG | Telephone conference with H. Rothbloom and Brad Patten regarding results of Rule 2004 exams, pre and post examination document productions and litigation strategy, any foreseeable defenses to the fraudulent action | 1.10 | 808.50 |
| 04/12/2024 | NG | Call from Capital One about demand letter and exhibits and in which it ultimately advises it will not respond to anything coming from the trustee and will not have an attorney contact me (.2); prepare memo to P. Bicknell to draft complaint against Capital One to avoid fraudulent transfer, terms and grounds to include, etc. (.3) | 0.50 | 367.50 |
| 04/17/2024 | PB | Prepare adversary proceeding against Capital One for avoidance of the fraudulent transfers | 3.10 | 868.00 |
| | NG | Review complaint and exhibits for lawsuit against Capital One and and compare to file information | 0.80 | 588.00 |
| 04/18/2024 | NG | Begin revisions to complaint | 1.60 | 1,176.00 |
| 04/21/2024 | NG | Continued work on Complaint | 0.60 | 441.00 |
| 04/22/2024 | NG | Continue to revise and supplement complaint and add additional exhibits | 0.70 | 514.50 |
| 04/24/2024 | NG | Continued work on the Complaint and exhibits | 0.90 | 661.50 |
| 04/26/2024 | PB | Prepare and file certificate of service of Complaint and Summons and service of same by Certified Mail to corporate officer | 0.90 | 252.00 |
| 05/28/2024 | NG | Correspondence from and telephone conference call with Capital One counsel from Troutman Pepper, Christina Lesko, regarding (a) background and counsel was just employed and seeking an extension to respond to the complaint, and (b) motion filed already for extension of time, and (c) proceeding with a stipulation granting same | 0.50 | 367.50 |
| 05/29/2024 | NG | Review follow-up correspondence with proposed stipulation from opposing counsel for Capital One regarding extension deadline to respond to the complaint and draft response thereto | 0.30 | 220.50 |
| 06/06/2024 | NG | Telephone confrence call from Capital One counsel, Christina Lesko, regarding her analysis of the records and further background | 1.00 | 735.00 |

Neil Gordon, Atty for Neil Gordon Trustee

Statement Date: 11/07/2024
Statement No. 877648
Account No. 84006.0153

| | | | Hours | |
|---|---|---|---|---|
| 06/24/2024 | NG | Review lengthy confidential settlement correspondence from Christina Lesko for Capital One and consider defenses raised therein (.6); consider amount to assert as a counteroffer and draft response with same (.2); further settlement correspondences (x4) (.4); memo to P. Bicknell regarding settlement and to draft the proposed agreement, terms, tec. (.2); correspondence to Ms. Lesko to have her prepare a consent motion to extend the response deadline for the answer (.1); follow-up correspondence with same (.1) | 1.60 | 1,176.00 |
| 06/26/2024 | NG | Review correspondence from Christina Lesko and drafts of motion and proposed consent order on extending response deadline pending settlement (.2); draft response with revisions needed to both (.3); review further correspondence regarding asking that we prepare the order (.1); memo to P. Bicknell regarding same (.1) | 0.70 | 514.50 |
| 06/27/2024 | PB | Review and make revisions to agreed motion to extend deadlines and proposed consent order | 0.80 | 224.00 |
| 06/28/2024 | NG | Review entered order on motion for extension of time; memo to P. Bicknell regarding same | 0.10 | 73.50 |
| 06/30/2024 | PB | Prepare joint stipulation and settlement agreement between Trustee and Capital One in resolution of the 11 U.S.C. section 548 complaint and turnover | 2.60 | 728.00 |
| 07/01/2024 | NG | Review, revise, supplement and complete draft of proposed settlement agreement with Capital One (.8); correspondence to opposing counsel regarding same (.2); make additional revisions (.2) | 1.20 | 882.00 |
| | NG | Memo to P. Bicknell regarding status of settlement agreement | 0.10 | 73.50 |
| 07/02/2024 | NG | Review and consider new version of settlement agreement from Christina Lesko (.5); draft correspondence to same regarding problems with her version and suggested modifications (.3); several correspondences with C. Lesko regarding resolving the problematic issue (.4) | 1.20 | 882.00 |
| 07/03/2024 | NG | Continued correspondence from and to C. Lesko regarding revisions to settlement agreement and release and proposed additional revisions | 0.80 | 588.00 |
| 07/12/2024 | PB | Prepare Motion to approve settlement agreement between Trustee and Capital One under Rule 9019 of the Federal Rules of Bankruptcy Procedure regarding resolution of lawsuit and notice of hearing regarding same | 2.60 | 728.00 |
| 07/16/2024 | NG | Review proposed settlement agreement and draft of Rule 9019 settlement motion (.4) and review, revise, and supplement motion (.7) | 1.10 | 808.50 |
| 07/17/2024 | NG | Correspondence with opposing counsel (x4) and review redline of agreement with revisions awaiting her client's approval | 0.40 | 294.00 |
| 07/22/2024 | NG | Settlement correspondence with Christina Lesko | 0.20 | 147.00 |

Neil Gordon, Atty for Neil Gordon Trustee

Statement Date: 11/07/2024
Statement No. 877648
Account No. 84006.0153

| | | | Hours | |
|---|---|---|---|---|
| 07/23/2024 | NG | Review proposed settlement agreement with final revisions received from opposing counsel for Capital One, and complete same (.3); correspondence to Christina Lesko regarding same and filing of Rule 9019 motion upon countersignature of her client (.2); review response correspondence (.1) | 0.60 | 441.00 |
| 07/30/2024 | PB | Prepare Negative Notice of Motion for an Order Approving Settlement Agreement Between Trustee and Capital One in accordance with Rule 9019 of the Federal Rules of Bankruptcy Procedure; Deadline to Object; and for Hearing | 0.80 | 224.00 |
| | PB | Prepare Certificate of Service of Notice of 9019 Motion, deadline to object, and for hearing on all parties on mailing matrix | 0.50 | 140.00 |
| 07/31/2024 | NG | Final review and revisions to Rule 9019 motion, related hearing notice, and COS | 0.40 | 294.00 |
| 08/21/2024 | NG | Legal research on claims allowance for investors in Ponzi schemes and other investor fraud cases and determine dominant view is that all repayments (none here) are applied to principal and only the principal balance can be allowed as the claim amount for such fraudulent enterprises (4.2); review documents attached to each claim for application of the foregoing principal, and outline objections to four claims to reduce them to the principal balance, and a fifth claim to disallow entirely as not an obligation of the debtor (and if it became one it would be an avoidably fraudulent incurrence of a debt as the loans were not made to the debtor) (.7) | 4.90 | 3,601.50 |
| 08/25/2024 | NG | Review status of pending Rule 9019 motion; memo to P. Bicknell re drafting order granting same on negative notice | 0.20 | 147.00 |
| | PB | Review 9019 motion regarding settlement with Capital One, N.A. and court docket regarding objections/responses filed and prepare proposed Order | 0.90 | 252.00 |
| 08/26/2024 | NG | Review, revise, supplement and complete proposed order on Rule 9019 motion | 0.20 | 147.00 |
| | NG | Continued work on claims needing objections and try to decide whether Rule 2004s need to first be pursued on two of them for $$860,000 (1.1); phone conference with H. Rothbloom regarding issue with his client's claim and try to resolve (.5); memo to P. Bicknell regarding where matters stand on these claim objections or 2004s (.2) | 1.80 | 1,323.00 |
| 08/27/2024 | NG | More closely analyze the Perez proof of claim (Claim No. 8) for $450,000 and extensive documents (1.1); research avoiding obligation as fraudulently incurred (.8); draft lengthy demand correspondence to claimant's counsel setting out invalidity of the claim or avoidability of the obligation incurred that results in the claim (1.3); telephone conference with claimant's counsel to discuss the foregoing and reach agreement that the claim will be withdrawn (.6) | 3.80 | 2,793.00 |

Neil Gordon, Atty for Neil Gordon Trustee

Statement Date: 11/07/2024
Statement No. 877648
Account No. 84006.0153

| | | | Hours | |
|---|---|---|---|---|
| | NG | Further analysis of claim number 3 and all documents (.7); draft correspondence to Brad Patton regarding objection that will be filed unless he voluntarily amends his clients claim to only $163,000 from $190,294.45 and legal reasons for doing so (.4) | 1.10 | 808.50 |
| | NG | Review insufficiently documented claim number 7 in the amount of $410,410 (.2); call the name and phone number on the claim (no lawyer is listed) and be yelled at and the subject of a torrent of profanity telling me to talk to his lawyer but refusing to tell me who it is (.2); draft memo to P. Bicknell to prepare motion for Rule 2004 examination and document production and documents needed (.2) | 0.60 | 441.00 |
| 08/28/2024 | NG | Review and consider correpondence from B. Patton (x2) regarding amending the claim versus the objections earlier set forth in correspondence to him and draft reply | 0.20 | 147.00 |
| | NG | Review entered order on Rule 9019 motion approving settlement of $120,000 with Capital One; memo to P. Bicknell regarding same and no need for scheduled hearing | 0.20 | 147.00 |
| | NG | Further review claims 5 and 6 for $178,500 and $262,500, respectively, and documents attached to each and determine these are also objectionable as containing improper interest and the obligations are likely avoidable under section 548 (.7); draft lengthy correspondence to T. Stapleton who filed both proofs of claim regarding the issues with the claims, the objections that will be filed if not resolved in the manner requested by the trustee, etc. (.8) | 1.50 | 1,102.50 |
| 08/29/2024 | NG | Review response from T. Stapleton and notate file accordingly | 0.10 | 73.50 |
| 08/31/2024 | PB | Review of proof of claim filed by Five K Check Cashing, Inc. (.30); prepare motion for B.R. 2004 examination of and document production by Jae J. Kim, individually and as the owner of Five K Checking Cashing, Inc. and proposed Order (1.4) | 1.70 | 476.00 |
| 09/03/2024 | NG | Review, revise, supplement and complete Rule 2004 motion, document production and proposed order regarding Five K Checking | 1.10 | 808.50 |
| 09/04/2024 | NG | Correspondence with T. Stapleton, Brad Patton, Howard Rothbloom (x3) and Mary Wise (x3) regarding imminence of claim objections being filed if amendments are not filed before end of the week in accordance with prior communications | 0.40 | 294.00 |
| 09/05/2024 | NG | Review amended claim and correspondence from B. Patton to resolve objection to Jiminez claim and draft response thereto (.2); correspondence from and to Mary Wise regarding claim number 7 by Gerardo Perez which is not an obligation of this estate and should be withdrawn (.2) | 0.40 | 294.00 |
| 09/06/2024 | NG | Review amended claims filed by Ted Stapleton to resolve trustee's objections from $178,500 to $100,00 and from $262,500 to $160,000 in accordance with resolution reached and notation to file regarding same | 0.20 | 147.00 |

Neil Gordon, Atty for Neil Gordon Trustee

Statement Date: 11/07/2024
Statement No. 877648
Account No. 84006.0153

| | | | Hours | |
|---|---|---|---|---|
| 09/08/2024 | PB | Prepare Subpoena Duces Tecum and cover letter to deponent regarding same and BR 2004 motion and Order | 1.70 | 476.00 |
| 09/09/2024 | NG | Correspondence with Mary Wise (x5) regarding Perez claim | 0.30 | 220.50 |
| | NG | Review entered order on Rule 2004 for Five K Checking and Mr. Kim | 0.10 | 73.50 |
| 09/11/2024 | NG | REview correspondence from H. Rothbloom and amended claim from $420,500 to $268.000 to resolve trustee's objection | 0.20 | 147.00 |
| | NG | Continuing correspondence with Mary Wise regarding trustee's objections to claim of Perez for $450,000 | 0.60 | 441.00 |
| 09/12/2024 | NG | Further correspondence with Mary Wise regarding withdrawal of the claim of $450,000 and note it has been filed although the register by mistake still shows it as pending (.2); review further correspondence and formal withdrawal of claim 8 (.2) | 0.40 | 294.00 |
| | NG | Review correspondence from Capital One counsel; memo to P. Bicknell to prepare dismissal with prejudice; review and complete | 0.20 | 147.00 |
| | PB | Prepare Dismissal of Adversary Proceeding with Prejudice | 0.80 | 224.00 |
| 09/13/2024 | NG | Telephone conference with George Kimel, attorney for Five K checking and Mr. Kim, regarding Rule 2004 document production and examination (.2); memo to P. Bicknell regarding same (.1) | 0.30 | 220.50 |
| 09/25/2024 | NG | Correspondence with George Kimel, counsel for Five K Checking and Mr. Kim regarding upcoming deposition and document production | 0.20 | 147.00 |
| 09/30/2024 | NG | Review status of document production and subpoena service date (.3); exchange memos with staff regarding foregoing (.2); telephone call and discussion with counsel George Kimel regarding missed document production date and upcoming deposition (.2); further memo to P. Bicknell regarding same (.1) | 0.80 | 588.00 |
| 10/01/2024 | NG | Correspondence and discussion with George Kimel for Five K Checking and Mr. Kim about withdrawing the claim and mooting the need for the Rule 2004 exam | 0.30 | 220.50 |
| 10/02/2024 | NG | Further correspondence with George Kimel and confirm claim withdrawn (.2); correspondence to G. Kimel regarding document production and examination under Rule 2004 cancelled as a result (.1); memo to P. Bicknell regarding same and canceling court reporter (.1) | 0.40 | 294.00 |
| | NG | Review file, including all pleadings, orders, memos, correspondence, court dockets, etc., in connection with preparation of the final fee application | 1.40 | 1,029.00 |
| | AF | Review of file and prepare attorney fee applicaiton | 2.80 | 784.00 |

Neil Gordon, Atty for Neil Gordon Trustee

Statement Date: 11/07/2024
Statement No. 877648
Account No. 84006.0153

| | | | Hours | |
|---|---|---|---|---|
| 10/03/2024 | NG | Review, revise, supplement and complete final fee application | 3.80 | 2,793.00 |
| | NG | Prepare proposed order on final fee application | 0.60 | 441.00 |
| | | FOR PROFESSIONAL SERVICES RENDERED | 121.00 | 67,096.50 |

FEE SUMMARY

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Neil Gordon | 4.70 | $595.00 | $2,796.50 |
| Neil Gordon | 70.00 | 735.00 | 51,450.00 |
| Angela Ford | 6.00 | 280.00 | 1,680.00 |
| Pamela Bicknell | 5.70 | 260.00 | 1,482.00 |
| Pamela Bicknell | 34.60 | 280.00 | 9,688.00 |

| | | |
|---|---|---|
| 03/01/2024 | Fee paid to Huseby.com Invoice 90048671 dated 2/28/2024 - Jacinto Huerta, Jr. Appearance - Full Day Per Diem - Takedown - Yasmin Perez Appearance - Full Day Per Diem - Takedown | 567.50 |
| 04/04/2024 | Federal Express - invoice #8-464-50133 | 30.21 |
| 04/27/2024 | Postage Charges - Cert Mail | 11.12 |
| 05/10/2024 | Service of Process fee Dated 02/15/24 paid to PROOF - Invoice # 405234 - Servee: Jacinto Huerta, Jr | 150.00 |
| 05/10/2024 | Service of Process fee Dated 02/16/24 paid to PROOF - Invoice # 406641 - Servee: Yasmin Perez | 202.70 |
| 05/10/2024 | Service of Process fee Dated 02/25/24 paid to PROOF - Invoice #411961 - Servee: Jacinto Huerta, Jr | 150.00 |
| 09/12/2024 | Service of Process fee paid to PROOF - invoice #564419 - Serve: Jae J. Kim, individually and as the owner of Five K Check Cashing, Inc | 216.85 |
| | TOTAL EXPENSES/COSTS ADVANCED | 1,328.38 |
| | TOTAL CURRENT FEES AND COSTS | 68,424.88 |
| | **Balance Due................................** | $68,424.88 |

**Attorney-Client Privileged Communication**

**Please send payment within 15 days of receiving this invoice**

**Please access our secure online payment portal at https://taylorenglishbilling.com**

**Payment questions: 678-336-7258 - Kim Zaring**
**Billing questions: kzaring@taylorenglish.com**

**TAYLOR ENGLISH DUMA LLP**
**1600 Parkwood Circle, Suite 200**
**Atlanta, Georgia 30339**
**(770) 434-6868**

**PARTNERS**

**NEIL C. GORDON** — Admitted to Georgia Bar in 1979. Education: University of Florida (B.S.B.A. cum laude, 1976); University of Georgia (J.D. 1979). Law Clerk to Hon. Robert L. Vining, Jr., Judge, U.S. District Court, Northern District of Georgia, 1979-81; Publications: Co-Author, "*Law v. Siegel* Dicta Leads Lower Courts Astray," American Bankruptcy Institute Journal, Vol. XXXIV, No. 2 (February 2015); Co-Author, "When Can the Statute of Limitations for Avoidance Actions Be Extended?" American Bankruptcy Institute Journal, Vol. XXXII, No. 5 (June 2013); Co-Author, "*Schwab v. Reilly* Two Years Later: Appellate Opinions on Appreciation and 100 Percent of FMV," American Bankruptcy Institute Journal, Vol. XXXI, No. 9 (October 2012); Author, "Section 362(h) Does Not Deprive a Trustee of Standing to Void a Lien," American Bankruptcy Institute Journal, Vol. XXIX, No. 10 (December 2010/January 2011); Author, "An Overview of Mortgage and Finance Fraud for Trustees," in *Mortgage and Finance Fraud Litigation Strategies* (Thomson Reuters/Aspatore Books 2010); Author, "The Art of the Carve-Out," NABTalk, Vol. 25, No. 1 (Spring 2009); Co-Author, "New Tax Laws Affecting Home Sales Give Chapter 7 Trustees Long Overdue Relief" , Bankruptcy Court Decisions, Vol. 32, No. 20 (July 28, 1998); Co-Author, "Maximizing Returns for Estate Creditors by Minimizing Taxes: Exclusion of Gain from the Sale of the Debtor's Principal Residence", NABTalk, Vol. 16, No. 3 (Fall, 2000); Co-Author, "Recent Cases," Journal of the American Bankruptcy Trustee, Quarterly Publication of National Association of Bankruptcy Trustees (NABT 2003-present). Member: Atlanta Bar Association, Bankruptcy Law Section (Chair 1992-1993, Board Member 1988-1994); State Bar of Georgia; American Bankruptcy Institute (Legislation Committee Co-Chair 2013-2015); National Association of Bankruptcy Trustees (Board Director 2000-2014; Executive Committee 2006-2014; Secretary 2006-2007; Treasurer 2007-2008; Vice-President

**EXHIBIT "B"**

2008-2011; President 2011-2012; Immediate Past President 2012-2013; Past President Director 2013-2014); Panel, United States Trustees; Fellow, American College of Bankruptcy; Master of the Bench, W. Homer Drake Georgia Bankruptcy American Inn of Court; Full Member, National Association of Federal Equity Receivers. Recognitions: 2021 and 2022 Lawdragon 500 Leading Bankruptcy & Restructuring Lawyers; 2023 Georgia Trend's Legal Elite.

Seminar Presentations: "Tales from the Crypto: A Guide and Discussion," ABI SE Workshop, Amelia Island, Florida (July 20-23, 2023); " "Recent Court Rulings of Interest," Chapter 7 Panel Trustee Training – Northern District of Georgia, Atlanta, Georgia (August 11, 2022); "Case Law Update," Region 16 Webinar (February 11, 2022); "Post-Filing Issue Spotting: Consumer Practice Extravaganza (CPEX), ABI Conference, Indianapolis, Indiana (November 12, 2021); "Abandonment," The W. Homer Drake, Jr. Georgia Bankruptcy Inn of Court, Atlanta, Georgia (February 11, 2021); "Case Law Update," NABT Virtual Annual Conference (August 27, 2020); "Hot Trustee Topics in Consumer Cases," NCBJ Annual Conference, Washington, D.C. (November 1, 2019); "Suing Universities to Recover Tuition Paid for Adult Children," 22nd Annual Bankruptcy Seminar, Macon, Georgia (September 20, 2019); "Unscheduled Product Liability (and Other) Claims in Reopened Cases," 22nd Annual Bankruptcy Seminar, Macon, Georgia (September 20, 2019); "Case Law Update," NABT Annual Conference, Denver, Colorado (August 23, 2019); "Annual Panel Trustee Seminar: A Training Day in LA," Region 16 Chapter 7 Panel Trustee Training, Los Angeles, California (June 27, 2019); "Current Development/Recent Case Law Panel," Region 21 Chapter 7 Panel Trustee Training, Orlando, Florida (June 6-7, 2019); "Key Takeaways from the American Bankruptcy Institute's Commission on Consumer Bankruptcy Report," The Bench and Bar Committee, Atlanta, Georgia (May 6, 2019); "Tuition Clawback by Bankruptcy Trustees: The Focus Points for this Growing Litigation," Emory Bankruptcy Developments Journal Symposium, Atlanta, Georgia (February 21, 2019); "Case Law Update," Law Education Institute, Snowmass, Colorado (January 2-6, 2019); "Oh, Let Me Count the Days: Calculating Deadlines and Reach-back Periods in Avoidance and Other Actions," Cobb County Bar Association, Marietta,

Georgia (November 30, 2018); “Avoiding and Recovery Payments Made for Adult Children,” Cobb County Bar Association, Marietta, Georgia (November 30, 2018); “Suing Universities (and Others) to Recover the Tuition Payments Made for Adult Children,” The W. Homer Drake, Jr. Georgia Bankruptcy Inn of Court, Atlanta, Georgia (October 25, 2018); “Treatment of Product Liability and Similar Claims in Bankruptcy in a Reopened Case: (a) Are the Claims Property of the Estate, (b) If So, What Exemption Can Be Claimed, and (c) the Role of Judicial Estoppel,” The W. Homer Drake, Jr. Georgia Bankruptcy Inn of Court, Atlanta, Georgia (October 25, 2018); “Recent Developments/Case Law Updates,” Chapter 7 Panel Trustee Training – Northern District of Georgia, Atlanta, Georgia (September 14, 2018); “Case Law Update,” NABT Convention, Amelia Island, Florida (August 16, 2018); “Trustee Litigation – A Powerful Tool,” Region 21 Trustee Training Webinar (March 28, 2018); “The Powerball Jackpot (Case Law Update),” NABT Spring Seminar, Las Vegas, Nevada (February 23, 2018); “Exemptions,” “Consumer Case Law Update,” and “Business Case Law Update,” National CLE Conference in conjunction with the Colorado Bar Association and the Law Education Institute, Vail, Colorado (January 3-7, 2018); “Oh, Let Me Count the Days: Calculating Deadlines and Reachback Periods in Avoidance and Other Actions, Consumer and Business Bankruptcy Institute, Reynolds Plantation, Georgia (December 14, 2017);"Bankruptcy Avoidance Actions,” National Association of Attorney Generals, Savannah, Georgia (November 15, 2017); “Case Law Update,” NABT Convention, New Orleans, Louisiana (September 15. 2017); “Shark Tank: The Case for Increasing Chapter 7 Trustee Compensation,” American Bankruptcy Institute 22nd Annual Southeast Bankruptcy Workshop, Hilton Head Island, South Carolina (July 30, 2017); “Case Law Update,” NABT Spring Seminar, Rio Grande, Puerto Rico (March 3, 2017); “Case Law Update,” Law Education Institute (LEI) Conference, Snowmass, Colorado (January 4-8, 2017); “Exemptions,” American Bankruptcy Institute Winter Leadership Conference, Rancho Palos Verdes, California (December 1-3, 2016); “Obligations of Trustees in Fulfilling Their Fiduciary Duties,” American Inns of Court (November 17, 2016); “Simply the Best: Case Law Update," NABT Annual Convention, San Diego, California (September 9, 2016); “Exemption Issues in Chapter 13,” NACTT 51st Annual Conference,

Philadelphia, Pennsylvania (July 23, 2016); "Dismissal and Conversion Issues," NACTT 51st Annual Conference, Philadelphia, Pennsylvania (July 22, 2016); "Recent Cases: Case Law Update," NABT Spring Seminar, Atlanta, Georgia (April 8, 2016); "Avoidance and Recovery Actions Across the Chapters: Roles & Perspectives of Trustees," American Inns of Court Winter Program, Atlanta, Georgia (January 26, 2016); "Exemption Law – Immunity to Treat Creditors with Impunity or the Privilege of Fresh Start" and "Case Law Update: Commercial/Business," Law Education Institute (LEI) Conference, Vail, Colorado (January 6-10, 2016); "So You Thought You Understood Exemptions!" Cobb County Bar Association, Marietta, Georgia (October 10, 2015); "Does *Law v. Siegal* Really Stand for That?," National Conference of Bankruptcy Judges 89th Annual Meeting, Miami, Florida (September 27-30, 2015); "Exemptions" and "Case Law Update," NABT Annual Convention, Chicago, Illinois (August 27-29, 2015); "Case Law Update," United States Trustee Region 21-Northern District of Georgia Trustee Training (includes Florida, Georgia, Puerto Rico, and U.S. Virgin Islands Trustees), Atlanta, Georgia (August 21, 2015); "Case Law Update," NABT Spring Seminar, Charleston, South Carolina (February 27, 2015); "How to Approach Banks about Short Sales and Carve-Outs," American Bankruptcy Institute Conference, Tulane University, New Orleans, Louisiana (January 19, 2015); "Case Law Update," Law Education Institute (LEI) Conference, Vail, Colorado (January 7-11, 2015); "Zip Lining through the Tough issues in Avoiding a Preference or Set-Off," Institute of Continuing Legal Education in Georgia, Greensboro, Georgia (October 23, 2014); "Current Consumer Trends & Practices," American College of Bankruptcy, National Conference of Bankruptcy Judges 88th Annual Meeting, Chicago, Illinois (October 8, 2014); "The Nuts & Bolts of Chapter 11," American Bankruptcy Institute Workshop, Salt Lake City, Utah (September 12, 2014); "Case Law Update," NABT Annual Convention, Salt Lake City, Utah (September 12, 2014); "Case Law Update," United States Trustee Region 3 Trustee Training (includes Delaware, New Jersey, and Pennsylvania Trustees), Harrisburg, Pennsylvania (June 6, 2014); "Case Law Update," United States Trustee Region 21-Northern District of Georgia Trustee Training (includes Florida, Georgia, Puerto Rico, and U.S. Virgin Islands Trustees), Atlanta, Georgia (May 9, 2014); "The Nuts & Bolts of Chapter 11," American Bankruptcy Institute Southeast

Seminar, Coral Gables, Florida (April 5, 2014); "Case Law Update," NABT Spring Seminar, Coral Gables, Florida (April 5, 2014); "Chapter 7 and 11 Case Law Update," Law Education Institute (LEI) Conference, Vail, Colorado (January 5-9, 2014); "Real Estate Short Sales and Carve-Outs," American Bankruptcy Institute 25th Annual Winter Leadership Conference, Rancho Palos Verdes, California (December 6, 2013); "Chapter 7 & Hot Topics," National Conference of Bankruptcy Judges 2013 Annual Conference, Atlanta, Georgia (November 1, 2013); "Case Law Update" NABT 2013 Annual Meeting, White Sulphur Springs, West Virginia (August 8, 2013); "Plenary Session: Consumer Update 2013," American Bankruptcy Institute Southeast Seminar, Amelia Island, Florida (July 18-21, 2013); "Mortgage Avoidance Issues in Bankruptcy (A Trustee's Perspective)," 35th Annual Real Property law Institute, Amelia Island, Florida (May 9, 2013); "The Good, the Bad, and the Ugly – Case Law Update," NABT 2013 Spring Seminar, Scottsdale, Arizona (February 22-23, 2013); "Case Law Developments," "What Is the Trustee Up to Now?" "Mortgage Issues: Pervasive Issues and Abuses," and Fraudulent Conveyances," Law Education Institute (LEI) Conference, Snowmass, Colorado (January 2-5, 2013); "Case Law Update I," NABT 2012 Annual Meeting, Colorado Springs, Colorado (September 8, 2012); Case Law Update II," NABT 2012 Annual Meeting, Colorado Springs, Colorado (September 6, 2012) "Bankruptcy Issues for Auctioneers," National Auctioneers Association's 63rd International Auctioneers Conference, Spokane, Washington (July 18, 2012); "The Presidents' Panel: Current Issues in Consumer Bankruptcy," NACTT 47th Annual Seminar, New Orleans, Louisiana (July 13, 2012); "Waiter! Check Please! Paying the Tab in Consumer Bankruptcy: The Real Costs of Accessing the System," NACTT 47th Annual Seminar, New Orleans, Louisiana (July 12, 2012); "An Empirical Study of the Costs of BAPCPA," NABT 2012 Spring Seminar, Las Vegas, Nevada (March 31, 2012); "Sold! Short Sales/724(b) Sales: The New Normal," NABT 2012 Spring Seminar, Las Vegas, Nevada (March 30, 2012); "Ethics and Professionalism Potpourri," 36th Annual Judge Alexander L. Paskay Seminar on Bankruptcy Law and Practice, Tampa, Florida (March 17, 2012); "Latest Developments – Case Law Update," "Ethic Standards Re-Examined," and "Who Gets the Money? Claims Objections Issues," Law Education Institute's 29th Annual national CLE

Conference, Snowmass, Colorado (January 4 – 8, 2012); "Hot Topics in Chapter 7," ABI/NCBJ Roundtable, National Conference of Bankruptcy Judges, Tampa, Florida (October 12-15, 2011); "Case Conversion Issues," NABT 2011 Annual Meeting, Amelia Island, Florida (September 21-24, 2011); "Today's Chapter 7," Panel, Annual Southeast Bankruptcy Workshop, Kiawah Island, South Carolina (July 27-30, 2011); "Select Claim Objection Issues," NABT Spring Seminar, Santa Monica, California (March 26, 2011); "Looking Ahead: What's in Store for Consumer Practitioners in 2011," 35th Annual Judge Alexander L. Paskay Seminar on Bankruptcy Law and Practice, Tampa, Florida (March 10-12, 2011); "Chapters 7 and 11 Case Law Update," State Bar of Georgia Bankruptcy Law Section, Greensboro, Georgia (October 28, 2010); "Recovering Unauthorized Post-Petition Transfers," NABT Convention, San Francisco, California (October 1, 2010); "Chapter 7 Law Update," Middle District of Georgia Bankruptcy Institute, Macon, Georgia (September 17, 2010); " Individual Business Bankruptcy Cases," Metro Atlanta Consumer Bankruptcy Attorneys Group, Atlanta, Georgia (May 21, 2010), "Professionalism Issues," Atlanta Bar Association, Bankruptcy Law Section Seminar, Atlanta, Georgia (May 6, 2010); "Recurring Issues among Consumer Lawyers and Trustees and How to Avoid Them," American Bankruptcy Institute, Washington, D.C. (May 1, 2010); "The Nouveau Pauvre, or Who Used to Be a Millionaire (Finding Assets in Those Mid and Large Size Cases in Which the Debtors Used to Be "High-End" Debtors)," NABT Spring Seminar, Savannah, Georgia (April 9, 2010); "Trends and Threads in Business Cases: Case Law Update from the Front," National CLE Conference, Vail, Colorado (January 6, 2010); "Prebankruptcy Asset Protection and Planning: How Far Can the Line Be Pushed before the Trustee Reacts," National CLE Conference, Vail, Colorado (January 7, 2010), and "Making Sense of the Tide in Consumer Case/Issue Development: Caselaw Review of Recent Consumer Bankruptcy Decisions," National CLE Conference, Vail, Colorado (January 8, 2010); "Hot Topics in Chapter 7," ICLE Bankruptcy Seminar, Braselton, Georgia (November 12, 2009); "The Art of the Carve-Out," NABT Annual Convention, Boston, Massachusetts (August 29, 2009); "Hot Consumer Topics in Chapter 7," American Bankruptcy Institute 14th Annual Southeast Bankruptcy Workshop, Hilton Head, South Carolina (July 30, 2009 – August 1, 2009); "Negotiation/Out-of-Courtroom Skills

and Techniques," American Bankruptcy Institute's Skills Training Program, Atlanta, Georgia (June 4, 2009); "Select Trustee Issues," 11th Circuit Fellows Luncheon, American College of Bankruptcy, Washington, D.C. (March 27, 2009); "Case Law Update: The Good, The Bad, and The Ugly," National CLE Conference (LEI), Vail, Colorado, January 4-5, 2009; "Case Law Update," United States Trustee Region 21 Seminar (includes Florida, Georgia, Puerto Rico, and U.S. Virgin Islands Trustees), Atlanta, Georgia (October 21, 2008); "The Art of the Carve-Out," NABT Spring Seminar, Santa Fe, New Mexico (April 26, 2008); "Bankruptcy Claim Quandaries, Administrative Claims, Claims Evidentiary Issues, Superpriority Claims Upon Conversion to Chapter 7, Rejection Claims, and Estimation Claims," National CLE Conference (LEI), Vail, Colorado, January 4-6, 2008; "Select Exemption Issues," National Conference Bankruptcy Judges, Orlando, Florida (October 10, 2007); "Case Law Update," United States Trustee Region 21 Seminar (includes Florida, Georgia, Puerto Rico, and U.S. Virgin Islands Trustees) Atlanta, Georgia (September 27, 2007), "Administering Exempted Assets," NABT Spring Seminar, Atlanta, Georgia (March 16, 2007); "Pro Se Debtor Cases and Issues," American Bankruptcy Institute's 11th Annual Southeast Bankruptcy Workshop (July 26-29, 2006); "Case Law Update," United States Trustee Region 21 Seminar (includes Florida, Georgia, Puerto Rico, and U.S. Virgin Islands Trustees), Miami, Florida, Georgia (June 22-23, 2006); "Bankruptcy Reform Act - Hot Issues," NABT Spring Seminar, Phoenix, Arizona (March 4, 2006); "Tax Issues in the Era of the New Bankruptcy Reform Act," Georgia Society of CPAs, Atlanta, Georgia (June 21, 2005); "The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005: How will it affect your business?" AGG Seminar, Atlanta, Georgia (June 3, 2005); "Bankruptcy Issues for the Commercial Realtor," Atlanta Board of Realtors, Atlanta, Georgia (June 2, 2005); "Proving Deepening Insolvency," Emory Bankruptcy Developments Journal Symposium, Atlanta, Georgia (March 24, 2005); "Case Conversion Issues," United States Trustee Region 21 Seminar (includes Florida and Georgia Trustees), Savannah, Georgia (January 20-21, 2005); "New Developments: A Trustee's Perspective," NABT Convention, San Diego, California (September 11, 2004); "Holding onto Assets," NABT Spring Seminar, Las Vegas, Nevada (March 12-13, 2004); "Case Law Update," United States Trustee Region 21 Seminar,

Atlanta, Georgia (January 8, 2004); "Recovering Assets through Litigation in Bankruptcy," National Bankruptcy Training Institute, Columbia, South Carolina (November 18, 2003); Faculty Member, National Bankruptcy Training Institute, Columbia, South Carolina 5(2003); "Claims Review, Objections, and Resolutions," NABT Annual Convention, Washington, D.C. (September 9, 2003); "Perfection of Collateral" and "Guaranty Agreements," SouthTrust Bank Live Video Broadcast Seminar, Atlanta, Georgia (August 22, 2003); "Establishing Corporate Insider Liability: From Deepening Insolvency to Avoidance Issues," NABT Spring Seminar, Coral Gables, Florida (March 29, 2003); Training Seminar for New Trustees, Office of the United States Trustee (September 12, 2002); "Case Law Update," United States Trustee Region 21 Seminar (Florida and Georgia Trustees) (May 3, 2002); "Bankruptcy and Foreclosures," Georgia ICLE (April 17, 2002); "Loan Documentation Issues," (August 22, 2003); "How to Protect the Interest of Secured Creditors in Georgia," National Business Institute (NBI); "How New Bankruptcy Legislation Will Impact Your Practice," Consumer Bankruptcy Attorneys Association; "Advanced Real Estate Seminar: Bankruptcy Issues," NBI; "Ethics in Bankruptcy," State Bar of Georgia, Bankruptcy Law Section; "Chapter 11 Single Asset Real Estate Cases," Atlanta Bar Association, Bankruptcy Law Section; "Bankruptcy: An Overview," Georgia Department of Banking and Finance; "Bankruptcy: An Overview," Mortgage Bankers Association of Georgia; "Liens and Credit Issues in Bankruptcy," NBI.

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | **CASE NO. 22-60251-JWC** |
| | ) | |
| **LAVISH REMODELS LLC,** | ) | **CHAPTER 7** |
| | ) | |
| **Debtor.** | ) | |
| | ) | |

**AFFIDAVIT OF NEIL C. GORDON**

**STATE OF GEORGIA**
**COUNTY OF COBB**

Before me, the undersigned attesting officer duly authorized to administer oaths, personally appears Neil C. Gordon, who after being duly sworn, deposes and says:

1.

I am a partner in the law firm of Taylor English Duma LLP ("TED") and am the partner responsible for TED's representation in the above-styled Chapter 7 case.

2.

The facts set out in the foregoing *Application for Final Compensation by Attorneys for Trustee and Request for Authorization to Pay Compensation* and the Exhibits attached thereto, are true and correct to the best of my knowledge, information and belief. Those facts are known to me personally or established by business records of TED maintained in the ordinary course of business, including time and disbursement records made by lawyers and paralegals at TED respectively.

*/s/ Neil C. Gordon*
NEIL C. GORDON

Sworn to and subscribed before me
This 30th day of January, 2025.
*/s/ Angela G. Ford*
Notary Public
*My Commission Expires: 5/5/25*

ANGELA G. FORD NOTARY EXPIRES GEORGIA May 5, 2025 PUBLIC COBB COUNTY

EXHIBIT "C"

## CERTIFICATE OF SERVICE

This is to certify that I caused to be served the foregoing *Application for Final Compensation by Attorneys for Trustee and Request for Authorization to Pay Compensation* by causing a copy of same to be deposited in the United States Mail in a properly addressed envelope with adequate postage affixed thereon to assure delivery to:

Office of the United States Trustee
362 U.S. Courthouse
75 Ted Turner Drive, S.W.
Atlanta, Georgia 30303

This 31 day of January, 2025.

*/s/ Neil C. Gordon*
Neil C. Gordon